1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

CHRISTOPHER WILLIAM OLSEN,

Petitioner,

v.

JAMES KEY,

Respondent.

Case No. 3:19-cv-06111-BHS-TLF

REPORT AND
RECOMMENDATION

Noted for <u>February 17, 2023</u>

12

13

14

15

16

17

18

19

20

21

This matter comes before the Court on petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from an October 23, 2015 judgment and sentence for the crime of first degree murder. Dkt. 13-1 at 2–15. Petitioner alleges five grounds in his second amended petition: (1) ineffective assistance of trial counsel; (2) the prosecution violated *Brady v. Maryland,* 373 U.S. 83 (1963), by failing to disclose alleged plea agreements with witnesses; (3) ineffective assistance of appellate counsel; (4) insufficiency of the evidence after a witness's post-trial recantation of testimony; and (5) the trial court's refusal to give a multi-assailant jury instruction. Dkt. 47 at 26–41. In addition, petitioner has requested an evidentiary hearing in this matter. *Id*. at 41. Petitioner also requested oral argument. *Id*. at 1.

22

23

For the reasons set forth below, the undersigned finds that the issues in the petition can be appropriately resolved on the written record without oral argument. The

24

25

REPORT AND RECOMMENDATION - 1

Court recommends that the request for an evidentiary hearing be DENIED, and that the petition be DISMISSED. The undersigned recommends that issuance of the certificate of appealability (COA) be DENIED.

BACKGROUND

A.    Factual Background

Petitioner was found guilty of shooting and killing Robert Ward. The unpublished opinion of Division II of the Court of Appeals of Washington ("state court of appeals") affirming petitioner's conviction on direct appeal and on petitioner's first Personal Restraint Petition ("PRP") provides the following overview of the case:

> At approximately 6:00 PM on February 16, 2014, Robert Ward was shot and killed on Canyon Road in Pierce County. Olsen was arrested and eventually charged with first degree premeditated murder, first degree murder under circumstances manifesting an extreme indifference to human life, and second degree felony murder.
>
> At Olsen's trial, the State introduced evidence that Ward had stolen Olsen's rental truck on the day before the shooting. Olsen learned from Presley Lind that her acquaintances, Nathan Stevenson and Joseph Kaplin, knew Ward. According to Lind, at Olsen's behest, she, Stevenson, and Kaplin orchestrated a setup, so that Ward would be waiting at a shopping center on Canyon Road on February 16.
>
> Olsen claimed that he went to the Canyon Road shopping center to recover his stolen belongings from Ward. Olsen brought a firearm with him, pulled up behind Ward's car, and chased after Ward when he fled. When Ward panicked and drove into oncoming traffic, Olsen stopped his truck on the median, turned back toward Ward, aimed, and shot Ward in the head, killing him.

Dkt. 13-1 *State v Olsen*, No. 48294-1-II (Ex. 3) at 70, 2019 WL 1503801 at *1. The state court of appeals' opinion goes on to provide a more detailed summary of the relevant facts. *Id*. In the interest of brevity, the additional facts will not be re-stated here. Instead, where appropriate the Court will discuss more detailed facts relevant to the analysis of petitioner's claims in the analysis below.

REPORT AND RECOMMENDATION - 2

1

2

B.    State Court Procedural History

1.    Direct Appeal and First PRP

Petitioner was sentenced on October 23, 2015 to 608 months' confinement after a jury found him guilty of murder in the first degree. Dkt. 13-1 (Ex. 1) at 2–15. Petitioner brought a direct appeal through counsel, and also filed a *pro se* statement of additional grounds ("SAG") and a supplemental SAG. Dkt. 13-1 (Ex. 4) at 157–158; Dkt. 13-1 (Ex. 9) at 258–297; Dkt. 13-1 (Ex. 11) at 308–09. In addition, on September 21, 2016 petitioner filed a CrR 7.8 motion for new trial in the trial court, which was transferred to the state court of appeals as a PRP (the "First PRP") and consolidated with petitioner's then-pending direct appeal. Dkt. 13-1 (Exs. 5–7) at 159–204. Petitioner's counsel was appointed to represent him in both matters. Dkt. 13-1 (Ex. 7) at 202.

Petitioner's direct appeal, filed by counsel, raised five assignments of error—none of which are at issue in this petition. Petitioner's SAG asserted 22 additional grounds, of which three pertain to the claims asserted in this habeas petition: issue 7 alleging *Brady* violations, issue 16 alleging trial counsel's ineffectiveness in failing to impeach several witnesses and failing to seek a lesser included offense instruction, and issue 22 alleging trial counsel's ineffectiveness in failing to seek a multiple assailant instruction. Dkt. 13-1 at 281, 290, 292, 308.

Finally, among the issues raised by counsel in the First PRP are two issues relevant to this petition: (1) that new evidence showed witness Bryant Ward[1]—a passenger in the victim's vehicle—had recanted his trial testimony, and (2) that the

---

[1] Bryant Ward and the victim, Robert Ward, share a last name but are unrelated. Dkt. 52-1 (Ex. 42) at 692–693. To avoid confusion, the Court will follow the practice of the state courts and refer to Bryan Ward by his first or full name.

prosecutor violated *Brady* by delaying a final plea agreement with Bryant Ward until after he had testified in plaintiff's trial. Dkt. 13-1 (Ex. 5) at 159–197.

The state court of appeals remanded remanded for a reference hearing on the PRP; after the reference hearing, the court decided all of the issues in a two-part unpublished opinion. Dkt. 13-1 (Ex. 3) at 68–155, *State v. Olsen*, (Nos. 48294-1-II and 49554-6-II, 2019 WL 1503801 (Washington Court of Appeals April 3, 2019). First, the court rejected the arguments raised in petitioner's direct appeal; the court also held that the grounds raised in petitioner's SAG were lacking in merit, relied on matters outside the record, or were too vague to address. Dkt. 13-1 (Ex. 3) at 68–128, 2019 WL 1503801 at *1–*29.

Second, as to the PRP, the court remanded for a reference hearing for the trial court to rule on the credibility and reliability of witness Bryant Ward's recantation testimony. Dkt. 13-1 (Ex. 3) at 128, 2019 WL 1503801 at *29. After the trial court held a hearing, the state court of appeals denied the PRP, holding petitioner had not shown he was entitled to a new trial with respect to the recantation issue and that petitioner's *Brady* claim was outside the scope of the reference hearing. Dkt. 13-1 (Ex. 3) at 128–144, 2019 WL 1503801 at *29–*38. One member of the panel dissented in part with respect to the recantation issue. Dkt. 13-1 (Ex. 3) at 145–155, 2019 WL 1503801 at *38–*43.

Petitioner, through his counsel, sought discretionary review of the court of appeals' resolution of the recantation issue from the Washington Supreme Court, but did not seek review of any of the other issues raised in the state court of appeals. Dkt. 13-1 (Ex. 16) at 461. Petitioner sought leave to file a supplemental *pro se* brief raising

additional issues. Dkt. 13-1 at (Ex 17) at 479–81. On September 4, 2019, the

Washington Supreme Court denied the request to file a supplemental brief and denied

the petition for discretionary review. Dkt. 13-1 (Ex 20) at 535. The state court of appeals

issued its Mandate on November 12, 2019. Dkt. 52-1 (Ex. 42) at 1424.

2.    Second PRP

On November 5, 2020, petitioner timely filed an additional *pro se* PRP, and on

November 12, 2020, petitioner supplemented the Second PRP with additional grounds,

together with supporting exhibits. Dkt. 52-1 (Ex. 22) at 3–40; Dkt. 52-1 (Ex. 23) at 42–

118; Dkt. 52-1 (Ex. 24) at 120–140 (collectively, the "Second PRP"). The Second PRP

asserted 24 grounds of relief, of which the following are pertinent to petitioner's federal

habeas petition: (1) Insufficient evidence to support the conviction in light of Bryant

Ward's recantation and interview statements of witness Richard Pederson (fifth ground);

(2) defense counsel was ineffective in (a) not requesting a lesser included offense

instruction on manslaughter, (b) failing to call the defense investigator to impeach

witnesses, (c) failing to cross-examine key witnesses Bryant Ward and Richard

Pederson on their prior criminal history or pending plea bargains, and (c) advising

petitioner he must testify in order to receive a self-defense jury instruction (twelfth,

thirteenth and twenty-first grounds); (3) the trial court erred in not giving a multiple

assailant jury instruction (fourteenth ground); (4) the prosecution violated *Brady* by not

disclosing plea deals with key witnesses (nineteenth ground); and (5) appellate counsel

was ineffective in (a) failing to advance petitioner's SAG and PRP issues, (b) failing to

raise ineffective assistance of trial counsel and (c) failing to raise *Brady* issues (twenty-

second ground and supplemental ground one). *Id*. In addition, petitioner reiterated the

contention made in his First PRP that Bryant Ward's recantation required a new trial.

Dkt. 52-1 (Ex. 22) at 7–9.

The Washington Supreme Court Deputy Commissioner ("Deputy Commissioner") dismissed petitioner's Second PRP in a written ruling on December 19, 2021. Dkt. 47-1 (Ex. 20) at 287–291. Petitioner brought a motion to modify, which the Washington Supreme Court denied on March 30, 2022. Dkt. 52-1 (Ex. 30) at 541–559; Dkt. 52-1 (Ex. 31) at 563. The Washington Supreme Court issued a Certificate of Finality on April 1, 2022. Dkt. 52-1 (Ex. 32) at 565.

C.   Federal Habeas Corpus Proceedings

Petitioner initiated this habeas corpus proceeding on November 20, 2019, with a *pro se* petition. Dkt. 1. On January 13, 2020, the Court granted petitioner's motion for counsel and appointed the Federal Public Defendant to represent him. Dkts. 10, 11. On February 21, 2020, before counsel had appeared on behalf of petitioner, respondent complied with the then-applicable response deadline, filing an Answer and relevant portions of the state court record. Dkts. 12, 13. After petitioner's counsel appeared, the Court granted his unopposed motion to stay the proceedings to permit petitioner and his counsel to confer regarding potential grounds for an amended petition. Dkts. 15, 16.

On December 9, 2020, the Court granted petitioner's motion to lift the stay and to file an amended petition (Dkt. 23), and petitioner's amended petition was filed on the same date. Dkt. 24. However, petitioner thereafter brought another unopposed motion to stay, on the ground that the outcome of petitioner's then-pending Second PRP could result in further amendments to his petition. Dkt. 26. The Court granted the stay. Dkt. 28.

After the Court lifted the stay, Dkt. 46, petitioner filed a Second Amended Petition on April 19, 2022; this is the operative petition in this matter. Dkt. 47. Respondent has

filed an Answer and a supplemental state court record. Dkts. 51, 52. Petitioner filed a traverse (Dkt. 55) and respondent has filed a reply (Dkt. 56).

DISCUSSION

I. <u>EXHAUSTION OF STATE COURT REMEDIES AND PROCEDURAL BAR</u>

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). Here, respondent agrees that petitioner has properly exhausted all of his claims except the portion of his ineffective assistance of trial counsel claim addressing the failure to impeach Presley Lind. Respondent contends the sub-claim pertaining to Presley Lind is unexhausted and procedurally barred. Petitioner has not disputed this argument.

A state prisoner must exhaust state remedies by fairly presenting the same factual and legal bases for claims of any violation of federal rights to the state courts, before including those same claims in a petition for writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). Exhaustion of federal claims requires the petitioner to finish "one complete round of the State's established appellate review process," up to the highest state court with powers of discretionary review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

When a prisoner defaults on his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A prisoner defaults on a federal habeas claim when he fails

to exhaust his state court remedies with respect to a claim and the court to which the

prisoner would be required to present his claim in order to satisfy the exhaustion

requirement would now find the claim to be procedurally barred. *Coleman*, 501 U.S. at

735 n.1.

Petitioner included in his SAG a claim that his counsel was deficient for not

cross-examining Lind on her plea deal and criminal history. Dkt. 13-1 (Ex. 9) at 290.

However, petitioner did not present this issue to the Washington Supreme Court. It was

not included in petitioner's motion for discretionary review of the state court of appeals

decision on the consolidated direct appeal and First PRP. *See* Dkt. 13-1 (Ex. 16) at 461.

Petitioner also did not present this issue in his Second PRP. *See* Dkt. 52-1 (Ex. 22) at

7–33. Accordingly, petitioner has not properly exhausted the portion of his ineffective

assistance claim pertaining to the cross-examination of Presley Lind.

Respondent argues this sub-claim is procedurally barred, because the time has

now passed for petitioner to bring the claim in a new PRP. Dkt. 51 at 8. RCW

10.73.090(1) provides that a PRP must be filed within one year after the judgment

becomes final. Petitioner's judgment became final for purposes of state law on

November 13, 2020, the date the Mandate issued in petitioner's direct appeal. *See*

RCW 10.73.090(3)(b). As more than a year has passed, petitioner would now be time

barred from returning to the state courts to present his unexhausted sub-claim. Thus,

federal review of this sub-claim is also barred absent a showing of cause and prejudice.

Petitioner has made no attempt to show cause and prejudice, and nothing in the

record suggests he could make this showing. Indeed, petitioner has not responded to

respondent's argument that the portion of his claim pertaining to Lind is unexhausted.

The Court recommends that the portion of Ground 1 contending counsel was ineffective in failing to adequately cross-examine Presley Lind be dismissed as procedurally defaulted.

Petitioner's remaining claims will be reviewed on their merits.

## II.  MERITS

### A.  Standard of Review

A habeas corpus petition filed under 28 U.S.C. § 2254:

[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). It also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision involves an "unreasonable application" of the Supreme Court's clearly established precedent if: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal

principle" from the Supreme Court's precedent "to a new context where it should not

apply or unreasonably refuses to extend that principle to a new context where it should

apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more

than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's

application of clearly established law must be objectively unreasonable." *Id.*; *see also*

*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This is a "'highly deferential standard," which "demands that state-court decisions

be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

(quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102

(quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in

judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore,

"a state prisoner must show that the state court's ruling on the claim being presented

was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.*

at 103.

A habeas petition also may be granted "if a material factual finding of the state

court reflects 'an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8

(9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual determination is "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A federal district court therefore "may not simply disagree with the state court's factual determinations"; it must "conclude" that those determinations did not have even "fair support" in the state court record. *Thatsaphone v. Weber*, 137 F.3d 1041, 1046 (8th Cir. 1998).

"[W]hether a state court's decision was unreasonable" also "must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court knew and did," and the state court's decision is "measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Pinholster*, 563 U.S. at 182 (quoting *Lockyer*, 538 U.S. at 71–72); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011). In addition, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The error, furthermore, must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

B.   Ineffective Assistance of Trial Counsel (Ground 1)

Petitioner claims that he received ineffective assistance from his trial counsel for three reasons: (1) counsel failed to request a jury instruction on the lesser included offenses of first and second degree manslaughter; (2) counsel failed to adequately impeach key state witnesses Bryant Ward, Richard Pederson and Presley Lind[2]; and (3) counsel incorrectly advised petitioner that his testimony was required in order to obtain a jury instruction on self-defense. Dkt. 47 at 26–32.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).

Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. A defendant must prove (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair

---

[2] As discussed above, the Court recommends dismissal of the portion of this claim pertaining to allegations that defense counsel was ineffective for failing to cross-examine Presley Lind on her plea deal and criminal history. This portion of the claim should be dismissed for failure to exhaust state remedies, and because it is procedurally barred. The Court therefore does not analyze the merits of the portion of this claim pertaining to Pressley Lind.

1    assessment of attorney performance requires that every effort be made to eliminate the

2    distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

3    conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In

4    order to prevail on an ineffective assistance of counsel claim, a petitioner must

5    overcome the presumption that counsel's challenged actions might be considered

6    sound trial strategy.

7         The second prong of the *Strickland* test requires a showing of actual prejudice

8    related to counsel's performance. In order to establish prejudice, a petitioner "must

9    show that there is a reasonable probability that, but for counsel's unprofessional errors,

10   the result of the proceeding would have been different. A reasonable probability is a

11   probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

12        While the Supreme Court established in *Strickland* the legal principles that

13   govern claims of ineffective assistance of counsel, it is not the role of the federal habeas

14   court to evaluate whether defense counsel's performance fell below the *Strickland*

15   standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective

16   assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether

17   the state court's application of the *Strickland* standard was unreasonable." *Id*. Under this

18   "doubly deferential" standard, "a federal court may grant relief only if *every* 'fairminded

19   juris[t]' would agree that *every* reasonable lawyer would have made a different

20   decision." *Dunn v. Reeves*, 141 S. Ct. 2405, 2411 (2021) (quoting *Harrington*, 562 U.S.

21   at 101) (emphasis in original). As the Supreme Court explained in *Harrington*, "[a] state

22   court must be granted a deference and latitude that are not in operation when the case

23   involves review under the *Strickland* standard itself."  *Harrington*, 562 U.S. at 101.

24

25

1        1.      Failure to Request Manslaughter Instruction (Ground 1.1)

2        Petitioner contends his trial counsel was ineffective because he failed to request

3    jury instructions on the lesser included offenses of first and second degree

4    manslaughter. Dkt. 47 at 26–28. Respondent argues the state court of appeals

5    reasonably concluded the decision was conceivably part of a legitimate trial strategy to

6    obtain an acquittal. Dkt. 51 at 30–34.

7        The state court of appeals held second-degree manslaughter was not supported

8    by the evidence, but a first-degree manslaughter instruction may have been appropriate

9    —if petitioner had requested it. Dkt. 13-1 (Ex. 3) at 111, 2019 WL 1503801 at *21. The

10    court concluded that the decision not to seek a first degree manslaughter instruction

11    was not deficient, because it could be seen as part of a reasonable trial strategy

12    applying an all-or-nothing approach:

> Olsen fails to meet his burden to show that he received ineffective assistance of counsel. Not requesting the manslaughter instruction was conceivably part of a legitimate all or nothing strategy to obtain an acquittal. As in *Grier*, here Olsen's trial strategy was to argue self-defense, which was a defense to all charged crimes. Olsen knew that Ward had a violent, deadly reputation and was likely armed. Olsen said that he went to the Canyon Road shopping center to talk to Ward and to get the stolen truck back. And Olsen claimed that he saw Ward raise a gun and thought that Ward was chasing him when Olsen shot at Ward. Thus, as in *Grier*, "acquittal was a real possibility, albeit a remote one." 171 Wn.2d at 43.
>
> Olsen fails to show that not requesting a first degree manslaughter instruction was objectively unreasonable. Rather, the decision was conceivably part of a legitimate trial strategy to obtain an acquittal. Accordingly, we reject Olsen's ineffective assistance of counsel claim.

21    Dkt. 13-1 (Ex. 3) at 112, 2019 WL 1503801 at *22.

22        The state court of appeals correctly applied the *Strickland* standard. As the state

23    court of appeals observed, and the record demonstrates, counsel's theory of the case

24    "focused on arguing self-defense" Dkt. 13-1 (Ex. 3 at 81), 2019 WL 1503801 at *6. To

25

that end, counsel emphasized jury instructions placing the burden on the state to prove the homicide was not justifiable, and highlighted evidence that petitioner was aware of the victim's possession of a weapon and reputation for violence. Dkt. 13-1 (Ex. 3) at 112, 2019 WL 1503801 at *22. *See also* Dkt. 52-1 (Ex. 39) at 1307–1335 (transcript of counsel's closing argument). An "all or nothing" approach was consistent with this strategy, placing the self-defense theory at the forefront, and forcing a choice between a full acquittal or conviction of intentional homicide.

The use of an all or nothing strategy is not deficient where it is part of a tactical decision. A defense counsel's performance is not constitutionally ineffective if he or she, "with adequate knowledge of the law and the evidence," chooses not to request a lesser-included offense instruction as long as such a choice is reasonable. *Butcher v. Marquez*, 758 F.2d 373, 376–77 (9th Cir. 1985). Even if with hindsight an all or nothing strategy proves incorrect, it does not constitute ineffective assistance of counsel to forego a lesser included offense instruction "as the result of a tactical decision that the jury should be forced to the choice of finding [defendant] guilty of deliberate homicide or acquitting him outright." *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). *See also Chinchilla v. Lewis*, 723 F. App'x 443, 448 (9th Cir. 2018) (Berzon, Concurring) ("I would hold that a competent lawyer might well have adopted the strategy of keeping from the jury the attractive option of a lesser-included offense" where it would have carried "a far from insignificant sentence.")

Here, petitioner has submitted no evidence rebutting the presumption that counsel's decision not to pursue a manslaughter instruction "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. This sets this case aside from *Crace v.*

1    *Herzog*, 798 F.3d 840, 853 (9th Cir. 2015), relied upon by petitioner, where counsel

2    explicitly stated in a declaration that he did not request a lesser-included jury instruction

3    because he did not consider it. Petitioner has not demonstrated that "*every* fairminded

4    juris[t] would agree that *every* reasonable lawyer would have made a different

5    decision." *Dunn*, 141 S. Ct. at 2411.

6    　　　Furthermore, petitioner has not established the prejudice prong of Strickland.

7    Here, the state court of appeals found the evidence of petitioner's guilt "overwhelming."

8    The jury, after considering the evidence, found that petitioner had acted intentionally in

9    setting up, pursuing, shooting and killing Ward. In light of the strength of the evidence

10   supporting petitioner's intentional acts, petitioner has not shown a lesser-included jury

11   instruction would have changed to outcome of the trial.

12   　　　Petitioner has not established the state court unreasonably applied the *Strickland*

13   standard to his counsel's failure to request a manslaughter instruction. Petitioner's claim

14   of ineffective assistance of counsel based upon this failure should be dismissed.

15   　　　2.　　Failure to Impeach Witnesses (Ground 1.2)

16   　　　Petitioner argues his counsel was ineffective because he failed to impeach key

17   witnesses Bryant Ward and Richard Pederson regarding alleged plea agreements

18   providing them "clear incentive" to lie, as well as their previous convictions of crimes of

19   dishonesty. Dkt. 47 at 28–30.

20   　　　The Washington Supreme Court rejected petitioner's claim, holding petitioner

21   "simply asserts ineffective assistance without supporting analysis" and fails to show

22   counsel's conduct fell below a professional standard of reasonableness, or that

23   adequate performance would have led to a reasonable probability the outcome of the

24   trial would have been different. Dkt. 47-1 (Ex. 20) at 290.

25

With respect to petitioner's plea agreement contentions, the Washington Supreme Court found petitioner did not "show beyond speculation that any such deals existed before Mr. Pederson and Bryant Ward testified." Dkt. 47-1 at 328. Thus, any attempted cross-examination on this issue would have been wholly speculative—and potentially subject to exclusion. Under such circumstances, the state court was not unreasonable in concluding petitioner had not shown counsel's conduct fell below a professional standard of reasonableness.

With respect to the witnesses' criminal history, petitioner has not shown that, in light of counsel's focus on a self-defense theory, his decision not to pursue impeachment on criminal history grounds was not a strategic decision warranting deference. Indeed, counsel made motions in limine seeking to limit the introduction of his own criminal history. Dkt. 52-1 (Ex. 43) at 1429. It would therefore be a reasonable strategic decision to avoid opening the door to such evidence by taking a conflicting position with respect to the State's witnesses.

Furthermore, petitioner has not met his burden to show prejudice. The jury did, in fact, hear evidence of criminal activity by both witnesses, when counsel cross-examined them regarding their drug use. Dkt. 52-1 (Ex. 33) at 1116–17, 1170. In addition, after Bryant Ward initially refused to testify, the parties reached an immunity agreement pertaining to any illegal drug use or transactions and the jury was informed of the agreement. Dkt. 52-1 (Ex. 34) at 720–21; Dkt. 52-1 (Ex. 33) at 642. Petitioner has not demonstrated that, in light of the self-defense theory that was the focus of his defense, additional evidence of criminal activity by the two witnesses would have altered the outcome of the proceeding.

The state court reasonably adjudicated petitioner's *Strickland* claims regarding counsel's cross examination of witnesses Pederson and Bryant Ward. Petitioner's impeachment-based claims of ineffective assistance of counsel should be dismissed.

### 3.    Advice Regarding Petitioner's Testimony (Ground 1.3)

Petitioner's final ineffective assistance claim asserts counsel incorrectly advised him that he was required to testify on his own behalf in order to receive a jury instruction on self-defense. Dkt. 47 at 30–31. Respondent contends that, although such testimony was not legally required, it was the only testimony that could lay a sufficient evidentiary basis for self-defense and was therefore a reasonable trial tactic. Dkt. 51 at 39–41.

The Washington Supreme Court did not separately discuss this claim, but held generally that petitioner failed to show counsel's conduct fell below a professional standard of reasonableness, or that adequate performance would lead to a reasonable probability that the outcome of trial would be different. Dkt. 47-1 (Ex. 20) at 290.

The court did not unreasonably apply the *Strickland* standard. Although the parties agree there was no strict legal requirement that petitioner testify in order to receive a self-defense instruction, the record demonstrates that—as a practical matter—petitioner's theory of his case depended heavily on his own testimony.

The primary trial evidence supporting petitioner's theory that he "reasonably believed that the person slain intended to inflict death or great personal injury upon him" and that he "believe[d] in good faith and on reasonable grounds that he [was] in actual danger of great personal injury" (as the jury instructions provided) was petitioner's own testimony. *See* Dkt. 52-1 (Ex. 39) at 1317, 1320 (closing argument quoting jury instructions Nos. 25 and 26). Counsel's closing argument focused heavily on petitioner's testimony to make his self-defense arguments. Dkt. 52-1 (Ex. 39) at 1320–21.

Although petitioner also relied upon the testimony of Pedersen that Ward had a gun, Pederson's testimony was that Ward never raised the gun beyond his lap and did not point the gun at petitioner. Dkt. 52-1 (Ex 33) at 703–704. The only trial evidence that Ward pointed his gun at petitioner came from petitioner's own testimony. Dkt. 52-1 (Ex. 37) at 1050–51.

Similarly, the evidence regarding defendant's subjective motives in meeting with Ward on the night of the shooting—to have a conversation and try to get his money back—came only from petitioner's testimony. *Id*. at 1048. Finally, the evidence regarding petitioner's fear of harm from the victim likewise derived from petitioner's own testimony. *See*, *e.g. id*. at 1041,1048,1051.

Therefore, both the evidentiary support to justify the self-defense instructions, and petitioner's theory of the case, depended heavily upon petitioner's own testimony. The state court's determination that petitioner failed to show counsel's conduct fell below a professional standard of reasonableness, or that adequate performance would lead to a reasonable probability that the outcome of trial would be different, is entitled to deference.

Petitioner's ineffective assistance of counsel based upon the recommendation that plaintiff testify should be dismissed.

C.    *Brady* Violation (Ground 2)

Petitioner contends that the prosecution violated his rights by failing to disclose "some sort of agreements it had reached" with witnesses Bryant Ward and Richard Pedersen in their unrelated criminal prosecutions. Dkt. 47 at 32–33. Respondent argues there is no evidence that any such evidence existed during the time period covered by *Brady*'s disclosure obligation. Dkt. 51 at 14.

Petitioner points to lenient sentences that both Bryant Ward and Pedersen received upon guilty pleas in unrelated criminal matters, which were entered after petitioner's trial and sentencing. Dkt. 47-1 (Ex. 9) at 196–205; Dkt.47-1 (Ex. 18) at 271–283. Respondent's response to the Second PRP included declarations from the prosecutors involved in petitioner's and Bryan Ward's proceedings stating that the two matters were handled independently and no consideration was offered in exchange for Bryant Ward's testimony. Dkt. 13-1 (Ex. 15) at 440–42, 450–51, 454–56.

The state court of appeals declined to reach the *Brady* issue, holding that it fell outside the order for the reference hearing. Dkt. 13-1 at 142. On petitioner's Second PRP, the Deputy Commissioner rejected petitioner's claim:

> The Court of Appeals did not address the merits of another argument Mr. Olsen made on appeal because it depended on facts outside the record: that the State failed to disclose plea agreements with Bryant Ward and Mr. Pederson in exchange for their testimony. But Mr. Olsen still does not show beyond speculation that any such deals existed before Mr. Pederson and Bryant Ward testified. And he offers no competent evidence supporting his claim that the State got the trial court to "secretly" seal a plea deal with Bryant Ward. Mr. Olsen also contends that the State failed to disclose pretrial State interviews with Bryant Ward. But again, he does not show that any such interviews took place. Nor does he show that, even if such interviews were conducted, they contained undisclosed evidence that was favorable to him, the suppression of which prejudiced him.

Dkt. 47-1 (Ex 20) at 290.

The Constitution requires that the prosecution disclose to an accused all evidence that is "both favorable to the accused and 'material either to guilt or to punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985) (quoting *Brady*, 373 U.S. at 87). The duty to disclose encompasses both exculpatory evidence and impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *Bagley*, 473 U.S. at 676). Evidence is material "if there is a reasonable probability that, had the

1  evidence been disclosed to the defense, the result of the proceeding would have been

2  different." *Kyles v. Whitely*, 514 U.S. 419, 433–34 (1995) (quoting *Bagley*, 473 U.S. at

3  682). A "reasonable probability" is a probability sufficient to "undermine[] confidence in

4  the outcome of the trial."  *Id.* at 434 (quoting *Bagley*, 473 U.S. at 678).

5        To succeed on a *Brady* claim, a petitioner must show: (1) the evidence in

6  question was favorable to the defendant, meaning that it had either exculpatory or

7  impeachment value, (2) the prosecution possessed and withheld the evidence, and (3)

8  the defendant was prejudiced by the suppression. *Strickler*, 527 U.S. at 281–82 (1999).

9  The prejudice prong requires that the petitioner establish a reasonable probability that

10 the undisclosed evidence would have produced a different result. In determining

11 whether the petitioner has satisfied this burden, the court must consider the evidence in

12 light of all the evidence presented at trial, including forensic and other physical evidence

13 and the testimony of other witnesses. *Id*. at 292–94. Information that is not admissible is

14 not evidence, and thus cannot be material exculpatory evidence that would affect a

15 verdict. *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995).

16       Failure by the prosecution to disclose a promise of leniency can constitute a

17 *Brady* violation. *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). However, to

18 prevail on a *Brady* claim, the petitioner "must first demonstrate the existence of an

19 agreement whereby the state offered [the witness] leniency in sentencing in the criminal

20 case pending against him in exchange for his testimony." *Williams v. Woodford*, 384

21 F.3d 567, 597 (9th Cir. 2004). Where a witness merely testifies "in the hope" of

22 receiving a reduced sentence, there is no violation. *Id*.

23

24

25

Here, the Deputy Commissioner found no evidence of any agreement. This is consistent with the record, which shows that the prosecutors in petitioner's case made no promises or agreements with Bryant Ward or Pederson in exchange for their testimony. Dkt. 13-1 (Ex. 15) at 440–42, 450–51, 454–56. Petitioner has not established that the Washington Supreme Court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[3]

D.    <u>Ineffective Assistance of Appellate Counsel (Ground 3)</u>

Petitioner contends his appellate counsel provided ineffective assistance by (1) failing to advance petitioner's *pro se* claims in his SAG and First PRP, and (2) failing to raise a *Brady* claim in his direct appeal. Dkt. 47 at 35–37. Respondent argues petitioner has failed to establish the unpursued claims were meritorious or stronger than the claims counsel did advance. Dkt. 51 at 41–43.

The *Strickland* standard governing ineffective assistance of counsel also applies to claims pertaining to the effectiveness of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Where a petitioner claims ineffective assistance of appellate counsel, petitioner establishes prejudice by showing "a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *Id*. Where a merits brief is filed, appellate counsel has no constitutional obligation to raise every nonfrivolous, colorable issue on appeal, but only those

---

[3] Petitioner suggests that the Court should require an evidentiary hearing to determine whether any agreements existed. Dkt. 55 at 9. However, this Court's review must be limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181, (2011). An evidentiary hearing is not appropriate here.

arguments most likely to succeed. *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017); *Jones v. Barnes*, 463 U.S. 745, 751–54 (1983).

The Deputy Commissioner dismissed petitioner's appellate ineffective assistance claim because petitioner failed to establish that the issues counsel elected not to pursue were meritorious:

> Finally, Mr. Olsen argues that his appellate attorney was ineffective. To prevail on this claim, Mr. Olsen must demonstrate the merits of any issue counsel failed to raise or raised inadequately and then demonstrate actual prejudice. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835 (1994). Again, as to all of counsel's claimed deficiencies, Mr. Olsen provides no analysis. Moreover, Mr. Olsen mainly argues that counsel was deficient in not raising the issues Mr. Olsen raised in his pro se statement of additional grounds for review. The Court of Appeals addressed those issues on direct review and found them without merit. Indeed, it was precisely on this basis the court rejected Mr. Olsen's argument in his statement of additional grounds that appellate counsel was ineffective. Mr. Olsen is essentially trying to raise this issue again. He does not show that the interests of justice warrant reconsideration of this issue.

Dkt. 47-1 (Ex. 20) at 5.

The Washington Supreme Court properly applied the *Strickland* standard. Where appellate counsel did not fail to file a brief altogether, but instead chose to advance only selected issues, petitioner must "show[ ] that a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Robbins*, 528 U.S. at 288. Petitioner has not made that showing with respect to the 22 grounds in petitioner's SAG—and, as discussed above, the Washington Supreme Court reasonably held petitioner's *Brady* claim lacked merit.

Furthermore, petitioner has not demonstrated prejudice. First, without a showing that the claims were meritorious, petitioner cannot establish that he would have prevailed on his appeal. Second, to the extent that petitioner contends counsel's failure to seek state supreme court review of any of the issues raised in his SAG prejudiced his

ability to exhaust those claims, petitioner's timely filing of his Second PRP demonstrates that petitioner has been able to exhaust any claims originally advanced in the SAG that he has chosen to bring in the Second PRP.

The Washington Supreme Court reasonably applied the *Strickland* standard to petitioner's ineffective assistance of appellate counsel claim; this Court should therefore dismiss Ground 3.

E.  Insufficiency of Evidence in Light of Witness Recantation (Ground 4)

Petitioner asserts that two key witnesses—Bryant Ward and Richard Pedersen—have recanted their testimony, which renders the evidence insufficient to support his conviction. Dkt. 47 at 37–39. Respondent argues the Washington Supreme Court reasonably adjudicated petitioner's insufficient evidence claim under the applicable doubly deferential legal standard. Dkt. 51 at 18 (citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

1.  Facts

Pedersen and Bryant Ward were passengers in the car driven by Robert Ward prior to the shooting. The state court of appeals summarized their trial testimony as follows:

> Both Ward's passengers, Richard Pederson and Bryant Ward, testified for the State. Pederson, who was sitting in the front passenger seat of Ward's car, testified that he told Ward to leave when Lind warned Ward's passengers. When Ward left, Olsen began firing at Ward's car, and Ward quickly drove from the parking lot to an access road and onto Canyon Road.
>
> At the intersection, Pederson told Ward to turn left onto Canyon Road, but Ward "panicked and took a right and went into oncoming traffic." VRP (Sept. 21, 2015) at 1158. Pederson then realized that Ward had been shot in the head. According to Pederson, Ward was armed with a small handgun, which Ward drew at the intersection of the access road and Canyon Road but never raised above his lap.

> Bryant, who had been sitting in the backseat of Ward's car, explained that he had received immunity for "any drug activity" on February 16 in return for his testimony. VRP (Sept. 21, 2015) at 1101. According to Bryant, he heard a dozen gunshots coming from the pickup truck behind Ward's car, beginning within 5 to 10 seconds from when Ward accelerated his vehicle. Ward fled from the shopping center parking lot into an alley and out onto Canyon Road, turning into oncoming traffic. At this point, Olsen's truck was still pursuing. The gunshots continued, although Bryant neither heard anyone in Ward's car return fire nor saw a firearm in Ward's car. When some of the shots hit Ward's car, the car began to slow, and Bryant jumped out of the car and ran away from the scene.

Dkt. 13-1 (Ex. 3) at 74–75, 2019 WL 1503801 at *3 (footnote omitted).

In November 2015, within a month after petitioner's sentencing, Bryant Ward sent a letter to petitioner's mother that recanted his trial testimony "under penalty of perjury." *Id*. The state court of appeals describes the letter as stating that Bryant Ward lied to the police and at trial and, contrary to his trial testimony, stating that when petitioner followed the Robert Ward's vehicle, Robert "pull[ed] a gun out and point[ed] [it] back between the seats at the truck behind." *Id*. The letter (as quoted by the state court of appeals) continues:

> [Ward] continued driving and drove through a red light and [Pederson] & I told [Ward] to go left. [Ward] started to go left until he saw the guy in the truck [Olsen] go right.
>
> [Ward] then swerved right to go after the guy in the truck and we ended up in oncoming traffic. At that point I was so [ afraid] we were going to crash that I looked up and the last thing I saw was [Ward] pointing his gun at the truck, like as to shoot through the windshield. At that moment is when I heard the truck fir[ing] more shots. That's when I believe [Ward] to be shot.
>
> The truth of the matter is that all Mr. Olsen did was follow us out of the parking lot and he never fired his gun until Robert Ward pointed his gun at him and was trying to get it to fire. Olsen ended up being the one who was fleeing with [Ward] chasing him. Not the other way around. If Mr. Olsen didn't defend himself it would [have] been bad for him.

Dkt. 13-1 (Ex. 3 at 129–130), 2019 WL 1503801 at *30.

Petitioner claims that Pedersen also "retracted" his testimony, but this contention is based solely upon notes of two interviews conducted by petitioner's investigator before the trial and several years after it. Unlike Bryant Ward's letter, the post-trial interview notes do not dramatically vary from Pederson's testimony, except to express an opinion that petitioner acted in self-defense "because they both had guns." Dkt. 47-1 (Ex. 7) at 179–184.

When presented with Bryant Ward's retraction letter, the state court of appeals remanded to the trial court for a reference hearing to determine "whether Bryant testifies consistently with his statement [in the letter] . . . and whether Bryant's recantation is credible and reliable." Dkt. 13-1 (Ex. 3) at 130, 2019 WL 1503801 at *30. However, Bryant Ward asserted his Fifth Amendment privilege and refused to testify regarding the letter; he also denied ever meeting Olsen. Dkt. 134-1 (Ex. 3) at 132, 2019 WL 1503801 at *31. As a result, the court's majority held, the credibility and reliability of Bryant Ward's testimony could not be determined; the letter was inadmissible hearsay; and petitioner had failed to show he was entitled to a new trial based on new admissible evidence. Dkt. 13-1 (Ex. 3) at 128, 2019 WL 1503801 at *29.

2.    <u>Legal Standard</u>

When evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the Court itself believes the evidence establishes guilt. "Instead, the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *Wright v. West*, 505 U.S. 277, 284 (1992). The Court must "view the record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). The constitutional

sufficiency of evidence review is sharply limited. *Wright*, 505 U.S. at 296. The jury is entitled to believe the State's evidence and disbelieve the defense's evidence. *Id*.

Further, review under the *Jackson* standard is subject to "two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id*. (internal quotations and citations omitted). Second, on habeas review, a reviewing court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id*. (internal quotations and citations omitted).[4]

3.    State Court Determination

The Washington Supreme Court rejected petitioner's claim in the Second PRP that Bryant Ward's recantation and Pedersen's interview statements rendered the evidence insufficient:

> As to none of the arguments that the Court of Appeals rejected on the merits on direct appeal does Mr. Olsen show that reconsideration is warranted in the interests of justice, nor does he show there is good cause to again raise the ground for relief he asserted in his previous personal restraint petition. Several of his arguments depend on the claimed recantation of witness Bryant Ward, who was a passenger in the car that the victim, Robert Ward, was driving. But though this issue was the subject of a partially dissenting opinion in the Court of Appeals, Mr. Olsen does not show that any

---

[4] Petitioner does not address the *Jackson* standard but instead appears to argue based upon a theory of actual innocence. *See* Dkt. 55 at 15. As both parties acknowledge, the Ninth Circuit has "not resolved whether a freestanding actual innocence claim is cognizable" in a non-capital habeas case. *See id.*, quoting *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). But even if such a theory were cognizable here, the claim brought in the petition—and, importantly the claim brought in the Second PRP which exhausted petitioner's state remedies—is one for sufficiency of the evidence, not actual innocence. Dkt. 47 at 37; Dkt. 52-1 at 14. Accordingly, the *Jackson* standard applies. But the actual innocence standard, similar to *Jackson*, requires a showing that "no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Jones*, 763 F.3d at 1247 (citations and quotation marks omitted). As discussed in the text, petitioner has not made that showing.

developments since the issuance of the court's opinion demand that the issue be reexamined. (This court denied Mr. Olsen's petition for review raising this issue. No. 97157-9.) Mr. Olsen urges that the Court of Appeals did not consider that the other passenger in the car, Ricky Pederson, also supported his self-defense claim in two interviews with a defense investigator. But in those interviews Mr. Pederson said only that Robert Ward had a gun in his lap and then held it up by the steering wheel. He did not say Robert Ward pointed the gun or otherwise wielded it in a threatening manner. And Mr. Pederson based his belief that it was a case of self-defense simply on the fact that both Robert Ward and Mr. Olsen had guns. He did not relate any facts suggesting that Mr. Olsen had reason to believe Robert Ward was pointing a gun at him or was otherwise justified in using lethal force in self-defense.

Dkt 47-1 (Ex. 20) at 289 (footnote omitted).

    4.   <u>Analysis</u>

Petitioner has not met his burden under *Jackson* to establish there is not any rational trier of fact that "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

The state court of appeals reasonably held the new evidence upon which petitioner relied—the letter from Bryant Ward—was not admissible. And even if it were to be considered—and found reliable—the record contains ample countervailing evidence refuting petitioner's contention that he acted in self-defense. The state court of appeals described the evidence of petitioner's guilt as "overwhelming." Dkt. 13-1 (Ex. 3) at 94, 2019 WL 1503801 at *13.

First, the trial testimony and interviews of Pedersen (even after Pedersen was informed of Bryant Ward's recantation) establish that the victim did not raise his gun higher than the steering wheel and did not point it at petitioner. Dkt. 47-1 (Ex. 7) at 179–184.

The Court of Appeals further noted the testimony of bystander William Gamm refuted petitioner's testimony that he shot over his shoulder at Ward while attempting to

flee Ward's pursuit. The state court of appeals summarized Gamm's testimony as

follows:

> William Gamm, driving southbound, saw Ward's car driving north, into
> oncoming traffic in the left southbound lane. Gamm witnessed Olsen stop
> his truck partially on the median between northbound and southbound
> traffic. Then Olsen pointed a handgun out the truck's window, took aim,
> and shot four times at Ward's car. Ward's car was behind Olsen's truck
> and parallel to Gamm's vehicle, and Gamm feared he would be struck by
> the bullets. He recalled seeing Olsen's expression: "[j]ust a cold,
> intentional, wanting to hurt something [sic]." VRP (Sept. 22, 2015) at 1233.

Dkt. 13-1 (Ex. 3) at 75, 2019 WL 1503801 at *4. In addition, the evidence showed that

after the shooting, Ward's gun was found by a first responder "underneath Ward, on the

driver's seat. The handgun was fully loaded but had no bullet in the chamber." *Id*. This

indicates that Ward did not attempt to shoot his weapon. Dkt 52-1 (Ex 36) at 955–96.

      Plaintiff has not met his burden to show that no rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt. The Washington

Supreme Court's ruling reasonably applied established federal law and was not based

on an unreasonable determination of the facts in light of the evidence in the state court

record. Ground 4 of the petition should be dismissed.

F.    Trial Court's Refusal to Give Multiple Assailant Jury Instruction (Ground 5)

      Petitioner challenges the trial court's refusal to give a "multiple aggressor" jury

instruction because, he claims, he felt threatened by all three occupants of the car

driven by Robert Ward. Dkt. 47 at 39–41. Specifically, petitioner requested an

instruction that he was entitled to defend himself if "the person slain *or others whom the*

*defendant reasonably believed were acting in concert with the person slain* intended to

inflict death or great personal injury." Dkt. 52-1 (Ex. 39) at 1210–11 (emphasis added).

Respondent contends the instruction was appropriately refused because there was no evidence petitioner reasonably feared multiple assailants. Dkt. 51 at 24.

"[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle*, 502 U.S. at 71–72. In a federal habeas corpus case, the question before the Court is "whether the ailing [jury] instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id*. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "Where, for example, a jury instruction relieves the prosecution of its burden in proving every element of the offense beyond a reasonable doubt, the jury instruction violates due process." *Roettgen v. Ryan*, 639 F. Supp. 2d 1053, 1066 (C.D. Cal. 2009) (citing *Middleton v. McNeil,* 541 U.S. 433, 437 (2004)).

If the Court is reviewing an ambiguous instruction, the inquiry is "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle*, 502 U.S. at 72 (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). The challenged jury instruction "must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72.

The state court of appeals held:

> it was within [the trial court's] discretion not to include language about perceived danger from others because, at Olsen's trial, there was no evidence that he felt threatened by Pederson or [Bryant] Ward. Olsen's testimony was that it was *[Robert] Ward* who he knew to be dangerous, saw with a weapon, thought would start shooting, and was driving the car.

Dkt. 13-1 (Ex. 3) at 122, 2019 WL 1503801 at *26 (emphasis in original).

The court of appeals reasonably adjudicated this claim. The record contains no evidence that petitioner felt threatened by the passengers in Robert Ward's car; indeed, petitioner's testimony refers only to a concern about Ward himself. Dkt. 52-1 (Ex. 37) at 2082, 2085, 2135, 2136. There is no evidence that any of the passengers in Ward's car

were armed, or that petitioner had any reason to believe they were. In light of the dearth of evidence to support the requested instruction, the state courts' rejection was a reasonable application of controlling federal law. Ground 5 of the petition should be dismissed.

## EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*, 550 U.S. at 473. "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Pinholster*, 563 U.S. at 180. A hearing is not required if the allegations would not entitle petitioner to relief under § 2254(d). *Schriro*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Pinholster*, 563 U.S. at 186. The Court should find that it is unnecessary to hold an evidentiary hearing in this case because petitioner's claims may be resolved on the existing state court record.

## CERTIFICATE OF APPEALABILITY

If the Court adopts the undersigned's Report and Recommendation, it must determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)–(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of

his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Pursuant to this standard, this Court finds that no jurist of reason could disagree with the above evaluation of petitioner's constitutional claims or conclude that the issues presented deserve encouragement to proceed further and a COA should therefore be DENIED. Petitioner should address whether a COA should issue as to his remaining grounds in his written objections, if any, to this Report and Recommendation.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition for writ of *habeas corpus* with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the above time limit, the Clerk shall set this matter for consideration on **February 17, 2023** as noted in the caption.

Dated this 1st day of February, 2023.

Theresa L. Fricke
United States Magistrate Judge