UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER WILLIAM OLSEN,

               Petitioner,

   v.

MICHAEL OBENLAND,

               Respondent.

CASE NO. C19-6111 BHS

ORDER

THIS MATTER is before the Court on Magistrate Judge Theresa L. Fricke's Report and Recommendation (R&R), Dkt. 57, recommending that the Court deny petitioner Olsen's second amended habeas petition, Dkt. 47, dismiss the case, and decline to issue a certificate of appealability under 28 U.S.C. § 2253(c). Olsen has objected to the R&R, Dkt. 60, and the Government has responded to those objections, Dkt. 61.[1]

---

[1] The Government objects to the length of Olsen's filing under LCR 72. Dkt. 61 at 1. In response, Olsen asks the Court for retroactive permission to file an overlength brief. Dkt. 62. That motion is **GRANTED**.

ORDER - 1

## I. BACKGROUND.

On February 16, 2014, Olsen shot and killed Robert Ward on Canyon Road in Pierce County, Washington. Olsen believed Ward had stolen a rental truck from Olsen. Olsen arranged to have Ward meet him at a parking lot. Olsen arrived in a second truck, and Ward arrived in a car with two passengers, Richard Pederson and Bryant Ward (no relationship to Robert Ward). When he saw Olsen, Ward "peeled out" of the parking lot, and Olsen followed. Olsen began shooting at Ward's car, and Ward died from a shot to the head. The details of the incident are described in *State v. Olsen*, No. 48294-1-II, 8 Wn. App. 2d 1022, 2019 WL 1503801, at *1–5 (April 3, 2019).

Olsen fled. His truck was found with the ignition lock destroyed and the license plates removed, and with damage to the passenger side mirror consistent with shots fired from the driver's seat. Olsen was found in Idaho, charged, and tried.

At trial, passengers Richard Pederson and Bryant Ward, and bystanders William Gamm and Verne Yates, testified that Olsen pursued Ward's car and fired at the car. Olsen testified at trial that he acted in self-defense, because Ward shot first. In 2015, Olsen was convicted of first-degree murder in Pierce County Superior Court, and sentenced to 608 months in prison.

Olsen appealed and filed a personal restraint petition (PRP), which was consolidated with his appeal. Division II of the Washington Court of Appeals affirmed the conviction, over numerous assignments of error. However, it remanded Olsen's PRP for a reference hearing, based on a letter passenger Bryant Ward sent to Olsen's mother,

after Olsen was sentenced. That letter recanted Bryant Ward's trial testimony, and supported Olsen's self-defense claim.

Bryant wrote: "I felt responsible for a false testimony, so I took the liberty to write a truthful statement." He claimed he and passenger Pederson "lied to police," and that Bryant lied at trial because he feared that, "unless he testified favorably for the state, he would not receive a favorable plea bargain" on unrelated robbery charges. *Olsen*, 8 Wn. App. 2d 1022, 2019 WL 1503801 at *30. Bryant contended that when Olsen began following Ward, Ward drew a gun and aimed it back, between the seats, at Olsen's truck, and tried to fire. "Olsen ended up being the one who was fleeing with Ward chasing him, not the other way around. If Mr. Olsen didn't defend himself, it would have been bad for him." *Id*. (cleaned up).

Division II remanded the case to superior court to ascertain whether Bryant Ward's recanted testimony was credible, at a reference hearing. Olsen called Bryant as a witness, and when asked about his letter, Bryant asserted his Fifth Amendment rights. He also claimed he had never met Olsen. *Id*. at *31. The trial court concluded that the version of events in Bryant Ward's recantation letter was not plausible, and that Olsen had not demonstrated that Bryant's revised account was reliable and credible. It found that Bryant's letter was in fact not reliable or credible. It held that Bryant's letter was inadmissible hearsay, and that without it, there was no new evidence supporting a new trial. *Id*. at *32–33.

On appeal, Division II pointed out that it had asked whether Bryant's recantation was credible, not whether the letter was credible. *Id*. at *34. It affirmed the trial court's

ruling permitting Bryant to assert his Fifth Amendment rights. *Id*. at *35. It rejected Olsen's argument that Bryant's recantation was new evidence warranting a new trial. It concluded that the letter was hearsay and that it would, at most, be impeachment evidence at a new trial: "We agree with the State that since the recantation letter is merely hearsay and that Olsen has not shown that the recantation is credible, reliable and admissible, a new trial is not warranted." *Id*. at *37. The Washington Supreme Court denied Olsen's petition for discretionary review.

In 2020, Olsen filed a second PRP, pro se, asserting 24 grounds for relief. The Washington Supreme Court dismissed Olsen's second PRP in 2021, and issued a certificate of finality in 2022. Olsen initially filed his § 2254 petition in 2019. After the state court proceedings concluded (and after he obtained counsel), Olsen filed his operative second amended petition, Dkt. 47.

Olsen's second amended petition asserts five primary grounds for relief:

1. He received ineffective assistance of trial counsel because his attorney (a) failed to request a lesser included offense instruction on manslaughter, (b) failed to call the defense investigator to impeach witnesses, (c) failed to cross-examine key witnesses Bryant Ward and Richard Pederson on their prior criminal history or pending plea bargains, and (d) advised petitioner he must testify in order to receive a self-defense jury instruction. Dkt. 47 at 26.

2. The prosecution violated *Brady* by not disclosing plea deals with key witnesses, Bryant Ward and Richard Pederson. *Id*. at 32.

3. Olsen received ineffective assistance of appellate counsel because his attorney failed to raise ineffective assistance of trial counsel, and failed to raise the *Brady* issues above. *Id*. at 35.

4. There was insufficient evidence to support his conviction in light of Bryant Ward's letter recanting his trial testimony, and it was an unreasonable application of clearly established law to find otherwise. *Id*. at 37.

5. The trial court erred in not giving a multiple-assailant jury instruction. *Id*. at 39.

Judge Fricke's thorough R&R addresses and rejects each of these grounds at length. It concludes that Olsen has failed to demonstrate that the state Court of Appeals' resolution of any of his claims was unreasonable or contrary to clearly established federal law. Dkt. 57. It recommends that this Court deny Olsen's request for an evidentiary hearing, deny his second amended petition for habeas relief, and decline to issue a certificate of appealability under 28 U.S.C. § 2253(c). Dkt. 57 at 31–32.

Olsen's objections largely reiterate the arguments asserted in his petition. Dkt. 60. He argues that his conviction was the result of ineffective assistance of trial counsel, and that his appeal failed due to the ineffective assistance of his appellate counsel. He asserts that the Government violated *Brady* by failing to disclose what he claims was a plea agreement with key witnesses Bryant Ward and Richard Pederson. He argues that Bryant's recanted testimony is not hearsay, and that it undermines Bryant's trial testimony, leaving insufficient evidence to convict him of Ward's murder. He also asserts that he was constitutionally entitled to a multiple-assailant jury instruction.

## II. DISCUSSION

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3). A proper objection requires specific written objections to the findings and recommendations in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

"[I]n providing for a de novo determination . . . Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (internal quotation marks omitted). Accordingly, when a district court adopts a magistrate judge's recommendation, the district court is required to merely "indicate[] that it reviewed the record de novo, found no merit to . . . [the] objections, and summarily adopt[] the magistrate judge's analysis in [the] report and recommendation." *United States v. Ramos*, 65 F.4th 427, 433 (9th Cir. 2023). In so doing, district courts are "not obligated to explicitly address [the] objections." *Id.* at 437.

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to

the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The standard is "difficult to meet" and "highly deferential" such that state court decisions are to be "given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotations omitted). Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)).

A.  **Ineffective assistance of trial counsel.**

Olsen's claims about his trial counsel's deficiencies have been thoroughly addressed by the Washington Court of Appeals, and in the R&R. His most compelling complaint about counsel's performance is that he persuaded Olsen to testify, in an "all or nothing" effort to claim self-defense. Counsel did not seek a manslaughter instruction for the same reason.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court evaluates ineffective assistance of counsel claims under the two-prong test set forth in *Strickland*. To prevail, the prisoner must prove (1) that his counsel's performance was deficient, and (2) that this deficient performance was prejudicial. *Id.*

To establish deficient performance, Olsen must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. The Court must apply a "strong presumption" that counsel's conduct falls within the "wide range of reasonable professional assistance." *Id.* at 689. With respect to prejudice, Olsen must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

Federal habeas courts review ineffective assistance of counsel claims through a "doubly deferential" lens. *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). On federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

There was an ample supply of evidence supporting the state's case against Olsen. There were four eyewitnesses, including two bystanders, and Olsen did not dispute that he fired the shot that killed Ward. The physical evidence, including the location of the vehicles and Ward's gun, supported those witnesses' accounts. Olsen's best defense was that he shot Ward in self-defense. And the best chance of making that defense succeed was for Olsen to convince the jury that Ward pointed a gun at him, before Olsen shot. Indeed, Olsen was the only witness to so claim. Dkt. 57 at 19. Ward's gun was found under his body, on the seat, which is inconsistent with the claim he was pointing it at Olsen when Olsen killed him.

For these reasons, it is reasonable to conclude that Olsen's own testimony was the sole basis for the trial court's decision to instruct the jury on self defense. There was no other evidence to support that defense, and without Olsen's testimony, such an instruction likely would not have been given. The state courts reasonably determined that counsel's decision to have Olsen testify in an "all or nothing" effort to avoid a conviction was not constitutionally deficient. It was a risky strategy, but Olsen did not have better options. There is no showing that had Olsen not testified, the outcome would have been different.

The same is true of counsel's related decision to not seek a jury instruction on the lesser included offense of manslaughter. This too was part of the "all or nothing" defense strategy. As the state points out, asking for a manslaughter instruction in a case where the only defense is self-defense creates a "double edged" problem—manslaughter (reckless killing) provides the jury an "off ramp" but it also undermines the main defense that Olsen intentionally shot Ward in self-defense, because Ward was pointing a gun at him.

1  Dkt. 61 at 4 (citing *Mejia v. Davis*, 906 F.3d 307, 317 (5th Cir. 2018)).  It was a
2  reasonable if risky strategy, and there is no showing that the outcome would have been
3  different if counsel had requested such an instruction.
4       Olsen has not met his considerable burden of demonstrating that the state court's
5  resolution of his ineffective assistance claim was unreasonable or contrary to clearly
6  established federal law. The R&R on this point is **ADOPTED**, and Olsen's petition on
7  his ineffective assistance of trial counsel claim is **DENIED**.

8  **B.    *Brady* violations.**

9       Olsen continues to insist that Bryant Ward and Richard Pederson had plea
10 agreements with prosecutors, promising them lighter sentences in unrelated cases for
11 testifying against Olsen in his murder trial. The state court rejected this argument because
12 there is no evidence supporting it; the prosecutors in each case testified that there were no
13 such pre-trial plea agreements. The R&R concludes that this determination was not
14 unreasonable or contrary to clearly established federal law. The Court agrees. The R&R
15 on this point is **ADOPTED**, and Olsen's petition based on these alleged Brady violations
16 is **DENIED**.

17 **C.    Ineffective assistance of appellate counsel.**

18      Olsen's ineffective appellate counsel claim relies on the two claims above. He
19 asserts that his appellate attorney should have raised on appeal his trial counsel's
20 deficient performance, and the prosecutors' failure to disclose as *Brady* material its plea
21 agreements with Bryant Ward and Richard Pederson. Dkt. 47 at 36.

The state argues that *Strickland* imposes a presumption that counsel performed reasonably, and that Olsen has not established that the issues he now claims should have been raised were clearly stronger than the numerous issues counsel did raise on appeal. Dkt. 61 at 8 (citing *Smith v. Robbins*, 528 U.S. 359, 288 (2000)).

The Court agrees, particularly since it has rejected Olsen's petition based trial counsel's performance and the alleged *Brady* material. The R&R on this point is **ADOPTED**, and Olsen's habeas claim based on the performance of his appellate attorney is **DENIED**.

### D. Ward's Recantation.

Olsen's most compelling and unusual claim is that Ward's letter undermines his trial testimony, and requires a new trial. This claim was thoroughly litigated in state court, and after a reference hearing, the Court of Appeals rejected it. To prevail on his habeas claim on this ground, Olsen must demonstrate that the state court's adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. § 2254(d).

The Washington Court of Appeals analyzed Ward's recantation, and concluded that it was hearsay, and that it was not credible, reliable, or admissible. It also concluded it was impeachment evidence, at best, and that such evidence alone "is insufficient evidence upon which to grant a new trial." *Olsen*, 8 Wn. App. 2d 1022, 2019 WL 1503801, at *37.

1    Washington Rule of Evidence 804(b)(3) excepts from the general hearsay rule
2    "statements against interest." An unavailable witness's statement against interest may be
3    admissible if it tends to subject him to criminal liability *and* is corroborated by
4    circumstances indicating its trustworthiness. *See State v. J.K.T.*, 11 Wn. App. 2d 544, 566
5    (2019).

6    Olsen's reliance on Bryant's recantation faces at least two insurmountable hurdles.
7    First, this Court's review of the state court's adjudication is "doubly deferential." Dkt. 61
8    at 8 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). Olsen must show that the state
9    court's conclusion that the recantation was not admissible was unreasonable or contrary
10   to clearly established federal law. Second, he must establish that corroborating
11   circumstances indicate that the recantation is trustworthy.

12   Because he cannot show the latter, Olsen cannot demonstrate the former. Bryant's
13   recantation is not credible or reliable because it is inconsistent with the other evidence in
14   the case. Bryant's letter asserted that Olsen shot Ward backwards, over his shoulder.
15   Disinterested bystander Gamm saw the shooting, and he testified that Olsen pulled up
16   next to Ward's vehicle and "set himself up for a good, accurate shot." Dkt. 61 at 4 (citing
17   Dkt. 51-1 at 78).  Pederson (the other passenger in Ward's vehicle) testified that Ward
18   never brought his gun above his lap, and he did not point it at Olsen. Dkt. 52-1 at 1050–
19   51. Finally, a first responder found Ward's gun under his body, on the driver's seat, not in
20   his hand or even in his lap. This is flatly inconsistent with Olsen's version, and Bryant's
21   revised version, that Olsen shot Ward because Ward was pointing a gun at him. Bryant's
22

revised version is not reliable or credible, and it does not alter the sufficiency of the evidence.

Olsen has not established that Bryant's recantation is new evidence, or that it casts any doubt on the sufficiency of the other evidence upon which his conviction rested. The R&R on this point is **ADOPTED**, and Olsen's petition based on it is **DENIED**.

**E.  Multi-assailant jury instruction.**

Olsen's final habeas claim is that the trial court deprived him of a fair trial by refusing to give a "multiple assailant" jury instruction. He claims he credibly feared all the occupants of Ward's car. But there is no claim and no evidence that the others were armed, or that Olsen believed they were. He believed instead that Ward was armed. *See* Dkt. 57 at 30. The Court agrees that the failure to so instruct in the factual context of this case is not a violation of Olsen's due process rights, and Olsen has not established that the state court's adjudication of this issue was unreasonable, or contrary to clearly established federal law. The R&R on this point is **ADOPTED**, and Olsen's habeas petition based on it is **DENIED**.

**F.  Certificate of appealability.**

Finally, the R&R recommends that the Court deny Olsen a Certificate of Appealability under 28 U.S.C. §2253(c). To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. A petitioner must also demonstrate that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has adopted the R&R and denied Olsen's second amended habeas petition, but it notes that at least one reasonable jurist concluded that Olsen was entitled to a new trial. *See Olsen* at *38 (Sutton, P.J., dissenting). The Court agrees with Olsen that he "deserves encouragement to proceed further" on his habeas claim. For that reason, it declines to adopt the R&Rs recommended resolution of that final point, and it **WILL** issue Olsen a Certificate of Appealability.

\*\*\*

The Court agrees that Olsen has not established that the state court's determination of any of his grounds for relief was unreasonable or was contrary to clearly established federal law. Olsen's objections are **OVERRULED**, the R&R is **ADOPTED**, and Olsen's § 2254 petition is **DENIED**. The Court will **NOT** hold an evidentiary hearing. It **WILL** issue a certificate of appealability.

The Clerk shall enter a **JUDGMENT** and close the case.

**IT IS SO ORDERED**.

Dated this 8th day of March, 2024.

BENJAMIN H. SETTLE
United States District Judge